# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| O BAR CATTLE CO., a Utah d/b/a of Jerry Goodwin,<br><br>        Plaintiff,<br><br>  v.<br><br>OWYHEE FEEDERS, INC., an Idaho corporation,<br><br>        Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV08-149-S-EJL-CWD<br><br>**MEMORANDUM ORDER** |

Pending before the Court in the above-entitled matter is Defendant's Motion for Summary Judgment. Plaintiff has also filed a Motion for Leave to File First Amended Answer. The parties have filed their briefing on the motions and the matters are ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument. Local Rule 7.1.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, O Bar Cattle Co. ("O Bar"), is a cattle company owned by Jerry Goodwin and located in Ogden, Utah. O Bar owns steer and heifer calves bearing its brand. In October of 2007, O Bar alleges it entered into an oral contract for agistment with the Defendant, Owyhee Feeders, Inc. ("Owyhee"), whereby Owyhee would care for certain of O Bar's calves on its feedlot in Melba, Idaho. Under this agreement and between October 10 and November 15, 2007, O Bar transported over 2,000 steer calves and approximately 1,100 heifer calves to the Owyhee feedlot. In mid-November of 2007, O Bar initiated arrangements to transport an additional 300 plus calves to the Owyhee feedlot when it discovered its calves already located at Owyhee were "sick and dying." (Dkt. No. 1). O Bar did not transport the additional calves.

On January 25, 2008, O Bar payed Owyhee $405,876.14 for its care and feeding of its calves for the period of time from October through December of 2007. O Bar began arranging to transport its calves from Owyhee's feedlot and requested an accounting which, it argues, was never provided. O Bar alleges it was to meet with Owyhee's principals, Charlie Gibson and Robert Lincoln, on February 21, 2008 at which time O Bar would transport its remaining calves and Owyhee would provide an accounting for the deceased calves and the parties would discuss a settlement over the lost calves. O Bar alleges it arrived on

February 21, 2008 with ten livestock shipping trucks and Owyhee's employees loaded the surviving O Bar calves into the trucks but prevented the trucks from leaving until additional payment was made. O Bar alleges the Owyhee principals did not appear for the meeting as they had previously agreed to do and eventually Owyhee paid an amount of $190,134.48 under "protest." (Dkt. No. 1, p. 6). The amount paid was discounted from Owyhee's initial bill for $239,134.48 in order to account for the loss of certain of O Bar's calves.

The following day, on February 22, 2008, O Bar claims it transported the calves to another feedlot and discovered there were twenty less head of cattle than had been represented to them by Owyhee. Upon discovering this, O Bar alleges it placed a bank stop payment on the $190,134.48 check until the dispute could be resolved. Thereafter the parties were unable to resolve the dispute and on March 31, 2008, O Bar filed its complaint against Owyhee, seeking recovery of damages for breach of contract, negligence, conversion, and declaratory relief. (Dkt. No. 1). Owyhee has filed an answer and counterclaim asserting affirmative defenses to O Bar's claims and alleging claims for recovery for dishonor of check and money due on bailment. (Dkt. No. 5). O Bar has answered denying the counterclaims and raising affirmative defenses. (Dkt. No. 10). Owyhee then filed the instant motion for summary judgment and O Bar filed its motion to file an amended answer both of which the Court now takes up.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

---

[1] See also, Rule 56(e) which provides, in part:
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989). When applying this standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

I. Motion to Amend

O Bar has filed a motion to amend its answer to the counterclaims adding the affirmative defense of duress. This motion is a result of Owyhee's argument on summary judgment that O Bar has waived the duress defense by failing to plead it in its answer. O Bar counters that it has not waived the defense because it properly

raised the defense in connection with its briefing on the motion for summary judgment. Moreover, O Bar argues it alleged it wrote the check under "protest," that Owyhee is not prejudiced by allowing the defense to be added to the answer because Owyhee conducted discovery of the duress defense when it deposed Mr. Goodwin and Owyhee has addressed the defense in its briefing on summary judgment.

The Court finds O Bar's motion to amend is well taken and should be granted. As O Bar points out, "[a]lthough Rule 8 requires affirmative defenses to be included in responsive pleadings, absent prejudice to the plaintiff an affirmative defense may be plead for the first time in a motion for summary judgment." Ledo Financial Corp. v. Summers, 122 F.3d 825, 827 (9th Cir. 1997) (citing Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993)). The issue of duress was clearly known and addressed by both parties in discovery and their briefing on the motion for summary judgment. As such, the Court finds that Owyhee is not prejudiced by allowing O Bar to amend its answer to include the duress defense.[2] Further, the Court finds good cause exists to allow O Bar to amend the complaint so that the

---

[2] Owyhee complains that its prior motion to amend the pleadings was denied by the Magistrate Judge in this case. (Dkt. No. 77). Owyhee's motion to amend, however, was different from the instant motion by O Bar in that Owyhee's prior motion was made in conjunction with a request to extend the discovery deadline. (Dkt. Nos. 52, 74). The Magistrate Judge took up the motion in the context of resolving the parties heated discovery disputes in this case. The denial of Owyhee's motion to amend was appropriate in that context and was entirely different than O Bar's motion to amend now before the Court.

substantive arguments are properly presented and the matter can be fully resolved on the merits. Accordingly, the Court will grant the motion to file an amended answer.

II.     Motion for Summary Judgment

From Owyhee's perspective, the dispute here "boils down" to O Bar's liability for the $190,134.38 dishonored check tendered on February 21, 2008 that was, it argues, an accord and satisfaction. (Dkt. No. 66, p. 7). Owyhee claims under the Packers and Stockyards Act of 1921 and Idaho Law that it had an agister's lien[3] on the calves for services rendered and that O Bar obtained possession of his calves by fraud. Owyhee's motion seeks summary judgment on all of O Bar's claims and for entry of a judgment in Owyhee's favor in the amount of $190,134.38 on its counterclaims.

O Bar counters that this case arises from Owyhee's "mistreatment and resulting infliction of death or serious illness on hundreds of O Bar's calves" while they were in Owyhee's care. (Dkt. No. 78, p. 1). O Bar contends that genuine issues of material fact exists as to the claims in this case that precludes granting the motion for summary judgment.

---

[3] An "agister" is a person engaged in the business of pasturing of cattle as a bailee in consideration of an agreed price to be paid by the owner of the cattle. See Black's Law Dictionary, 61 (6th ed. 1990). An "agister's lien" is a lien on animals under an agister's care, to secure payment of the agister's fee. See Black's Law Dictionary, 1006 (9th ed. 2009).

**MEMORANDUM ORDER**                    7

A. O Bar's Claims

1. Breach of Contract

The complaint alleges Owyhee breached the parties' agreement by failing to properly perform its duty of caring for O Bar's calves and failing to provide O Bar with an accounting relating to the calves placed in Owyhee's care. (Dkt. No. 1, p. 8). Owyhee argues there was no breach of contract because O Bar's February 21, 2008 check was an accord and satisfaction that discharged the underlying contract between the parties and that Owyhee is a holder in due course of that check to which O Bar has none of the defenses available in Idaho Code § 28-3-305. In response, O Bar asserts that the check does not qualify as an accord and satisfaction under to Idaho Code § 28-3-310 and that it does have a defense to Owyhee's claim as a holder in due course. The Court finds that genuine issues of material fact exists regarding O Bar's breach of contract claim. Whether or not an oral contract existed and the terms of that contract between O Bar and Owyhee regarding the calves are disputed and cannot be decided on summary judgment. The same is true as to whether or not there was an accord and satisfaction.

"Accord and satisfaction is a method of discharging a contract or cause of action, [w]hereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement and the 'satisfaction' its execution or performance."

Strother v. Strother, 41 P.3d 750, 753 (Idaho App. 2002) (citations omitted). "Whether acceptance of a negotiable instrument effects an accord and satisfaction is governed by Idaho Code § 28-3-310, which states in pertinent part:"

> (1) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
>
> (2) ... the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
> ...
>
> (4) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

Id. The elements of an accord and satisfaction under Idaho Code § 28-3-310 are: "(1) the obligor in good faith tendered an instrument to the obligee as full satisfaction of the claim; (2) the amount of the claim was unliquidated or subject to a bona fide dispute; (3) the obligee obtained payment of the instrument; and (4) the instrument contained a conspicuous statement to the effect that it was tendered as full satisfaction of the claim." Shore v. Peterson, 204 P.3d 1114, 1120 (Idaho

2009) (citing Strother, 41 P.3d at 753 (citation omitted)). "In order for acceptance of a check to create an accord and satisfaction, the notation on the check or an accompanying writing must express in plain, definite, and certain terms that the debtor is giving such check in full satisfaction of the debt and that acceptance thereof discharges the debt." Strother, 41 P.3d at 753 (citations omitted).

Here, Owyhee argues that O Bar bargained for the release of his calves, obtained a reduction of $49,700 in his total bill, agreed to pay $190,134.31, tendered a check in that amount, and then stopped payment on the check. (Dkt. No. 98, pp. 4-5). The February 21, 2008 check itself states: Feed Jan and Feb for $239,834.31 and less market $49,700.00. (Dkt. No. 99, Ex. A). These notations on the check are essentially the same on all of O Bar's checks to Owyhee for other months with the exception of the "less market" line that deducted $49,700.00. Because the monthly invoices detail the services rendered and death losses, Owyhee maintains that O Bar's February 21, 2008 payment with the concession of $49,700.00 was an accord and satisfaction.

The Court finds a dispute over whether the invoices coupled with the check itself evidence an accord and satisfaction. O Bar viemently disputes that the February 21, 2008 check, or any of its previous or subsequent feed payments, were tendered as full satisfaction of its claims for losses whether it be those relating to the calves being transported that day from Owyhee's feedlot or O Bar's other

alleged damages from excessive death losses. Moreover, O Bar claims it rendered the February 21, 2008 check under duress and not in "good faith." Strother, 41 P.3d at 753 n. 3 ("The requirement of Idaho Code § 28-3-310(1)(i) that the tender be made in good faith may prevent formation of an accord and satisfaction where the tender is made in coercive circumstances. See Uniform Commercial Code Official Comment No. 4 to Idaho Code § 28-3-310."). The circumstances surrounding the events of February 21, 2008 are disputed by the parties. Whether the parties arrived at an agreement on that day as to their claims is very much in question and turns on facts disputed by the parties. As such, whether any prior contractual agreement was effected by the parties by their actions or words before, on, or after the events of February 21, 2008 is unresolved.

Further, upon the record before the Court, it cannot be said as a matter of law whether the February 21, 2008 check from O Bar contained a plain, definite, and certain statement that acceptance thereof would settle the dispute between the parties here. Rather, the notations indicated only that the February 21, 2008 check covered O Bar's payments due to Owyhee for feeding its calves for January and February less $49,700.00 for "market." What "market" means to these parties at that time is not plain, definite, or certain upon the record presently before the Court. The notation on O Bar's check do not evidence, at this time, an offer for an accord and satisfaction discharging any claims O Bar had for losses from Owyhee.

MEMORANDUM ORDER  11

What is undisputed, however, is that Owyhee has never received payment on the February 21, 2008 check. This fact is fatal to Owyhee's claim of accord and satisfaction. The third element of Idaho Code § 28-3-310 requires that the "claimant obtained payment of the instrument." See Idaho Code § 28-3-310(1)(iii). Owyhee has not received payment on the February 21, 2008 check and has filed a counterclaim in order to receive such payment. As such, Owyhee cannot make up an affirmative defense to the breach of contract claim based on an accord and satisfaction.[4]

2. Negligence of Bailee/Agistor

The complaint alleges Owyhee acted negligently in caring for its calves causing damages to O bar. (Dkt. No. 1, p. 9). Owyhee maintains it exercised reasonable care, diligence, and judgment in caring for O Bar's calves. Regardless, Owyhee argues the negligence claim is rebuffed by the February 21, 2008 check which left Owyhee as a holder in due course and was an accord and satisfaction of the parties' relationship. O Bar maintains that in addition to its contractual obligations, Owyhee breached its duty as a "stock rancher" to properly care for its

---

[4] Aside from Idaho Code § 28-3-310's provisions, an accord and satisfaction exists in common law as a method of discharging a contract. Because the obligation in this case was allegedly discharged by means of a negotiable instrument, Idaho Code § 28-3-310 governs. See Shore v. Peterson, 208 P.3d 1114, 1120 (Idaho 2009).

**MEMORANDUM ORDER** 12

calves pursuant to Idaho Code §§ 25-1001 and 1002 and any status as a holder in due course is irrelevant to the negligence claim.

Here again, genuine issues of material fact preclude entry of summary judgment on O Bar's negligence claim. Whether or not Owyhee was negligent in its care of O Bar's calves is in dispute. In his May 8, 2009 deposition, Mr. Goodwin testified about his concerns including his sick and dying calves on the Owyhee feedlot, the number of calves in the corrals, and the mixture of feed that was being given to the calves. (Dkt. No. 66, Ex. A). Owyhee denies that it acted negligently. As such the disputed facts between the parties preclude summary judgment on this claim. Owyhee's counter argument of accord and satisfaction has been denied above. As to Owyhee's argument that it is a holder in due course, the Court will address this argument below.

### 3. Conversion

The complaint alleges Owyhee wrongfully exercised dominion over O Bar's calves inconsistent with O Bar's ownership rights on February 21, 2008. Owyhee contends the conversion claim is without merit because Owyhee did not repudiate O Bar's right to possess his calves. Instead, Owyhee claims the calves were in its possession subject to the agister's lien of Idaho Code § 45-805. O Bar points to Owyhee's retention of 32 calves after the February 21, 2008 shipment and Owyhee's actions preventing the O Bar trucks from leaving on February 21, 2008.

Further, O Bar argues any agister's lien was extinguished when Owyhee loaded the calves into O Bar's trucks. Again, the parties dispute the number of cattle that were retained by Owyhee and the circumstances surrounding the events of February 21, 2008.

The tort of conversion in Idaho civil law has been defined as "dominion over chattels by a person not the owner, in a manner inconsistent with the rights of the owner." Perry v. Farm Bureau Mut. Ins. Co. of Idaho, 936 P.2d 1342, 1346 (Idaho App. 1997) (citations omitted). The elements of conversion are:

1.  That the opposing party exercised dominion and control over the claimant's items of property without a right to do so;
2.  That the claimant was consequently deprived of possession of those items of property;
3.  The nature and extent of the damages to the claimant and the amount thereof.

Brooks v. Gigray Ranches, Inc., 910 P.2d 744, 748 n. 3 (Idaho 1996). The word "dominion" means "ownership or right to property which arises from the power of disposition and the right of claiming it." Id.

"An agister's lien is strictly statutory, no such lien existing at common law." Gould v. Hill, 251 P. 167, 169 (Idaho 1926). Idaho Code § 45-805 provides for liens for services on or caring for property and entitles the lienholder to possession

and sale of the property.[5] Right to the agister's lien depends upon the claimant's possession of the property. See Hill v. Twin Falls Salmon River Land & Water Co., 125 P. 204 (1912). Where the lienholder voluntarily and unconditionally parts with possession or control of the property to which the lien attaches, the lien is lost. Twin Falls County v. Coates, 80 P.3d 1043 (Idaho 2003). Where, however, the lienholder parts with the property only conditionally or there is an intention to preserve the lien, the lien is not lost when the property is returned. Gould, 251 P. at 167. Likewise, the lien is not lost where the property is taken from possession of the lienholder by force or fraud. Id.

The parties dispute many of the facts relevant to this claim including the number of cattle that were retained by Owyhee and the circumstances surrounding the events of February 21, 2008. Thus, whether Owyhee improperly exercised dominion and control and deprived O Bar of possession of its calves on February 21, 2008 is disputed, as are the amount of damages. Likewise, the parties dispute the applicability of any agister's lien with Owyhee arguing O Bar had no right to

---

[5] Idaho Code § 45-805 provides "(a) Every person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof, by labor, or skill, employed for the protection, improvement, safe keeping, or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due him from the owner, for such service." If such liens are not paid within sixty days, "the person in whose favor such special lien is created may proceed to sell the property at a public auction" after giving proper notice. Id. Those providing for the "[l]ivery or boarding or feed stable proprietors, and persons pasturing livestock of any kind, have a lien, dependent on possession, for their compensation in caring for, boarding, feeding or pasturing such livestock." Id.

possess the calves until it had paid and, therefore, Owyhee's refusal to release the calves without payment was not a repudiation or dominion over O Bar's right to possess the calves.  O Bar counters that any lien was extinguished when Owyhee relinquished possession by having its employees load the calves into O Bar's trucks.  Their actions thereafter in refusing to allow the trucks to leave, O Bar claims, was without the benefit of an existing lien and an act of conversion to force O Bar to tender the $190,134.38 check on February 21, 2008.  Because these disputed facts exist as to the parties intentions and agreements, summary judgment must be denied.

What is clear, however, is that O Bar owed Owyhee a certain amount for its services and that Owyhee also owed O Bar an amount for its losses in the form of sick and dead calves. The facts are simply not developed enough at this stage to sort out the parties claims. That being said, it does not seem that the act of loading the calves on O Bar's transport trucks, in and of itself, is sufficient enough evidence to find that Owyhee had relinquished any rights it had to payment for its services.  Likewise, the tendering of the check, or checks, by O Bar may not have been a full resolution of its claims under the circumstances with its calves already loaded in the trucks, expecting that a meeting was to have taken place to resolve the dispute, and later discovering the head count to be inaccurate. Regardless, the motion is denied because these genuine issues of material fact exist.

4. Declaratory Relief

The complaint seeks declaratory relief in the form of a "judicial determination of the rights and duties of the parties under the agreement." (Dkt. No. 1, p. 10). O Bar points out that Owyhee does not address this claim in its motion. (Dkt. No. 78, pp. 2, 20). Because of the factual disputes noted above, the motion for summary judgment is denied as to this claim.

B. Owyhee's Counterclaims

1. Dishonor of Check

Owyhee claims it is a holder in due course of the February 21, 2008 dishonored check and entitled to recovery pursuant to Idaho Code §§ 28-3-301 through 305. O Bar counters that Owyhee is not entitled to enforce the February 21, 2008 check under the Idaho Code because it is not a holder in due course and the check was issued under duress. Even if Owyhee has a right to enforce the check, O Bar argues it is entitled to offset.

> A "holder in due course" means the holder of an instrument if:
> (a) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
> (b) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section

> 28-3-306, and (vi) without notice that any party has a defense or claim in recoupment described in section 28-3-305(1).

Idaho Code § 28-3-302. Article 3 of the Uniform Commercial Code governs the transfer and enforceability of negotiable instruments, such as O Bar's February 21, 20008 check in this case. See Zener v. Velde, 17 P.3d 296, 299 (Idaho App. 2000); Idaho Code §§ 28-3-102, 28-3-104. "Pursuant to Article 3, the right to enforce an instrument is limited by certain defenses available to the obligor." Id. Idaho Code Section 28-3-305(1) delineates the categories of defenses available to the obligor to defeat recovery on an instrument and states, in relevant part:

> (a) A defense of the obligor based on...(ii) duress, lack of legal capacity or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms...
> ....

Id. (citation omitted). "If a person entitled to enforce an instrument is a holder in due course, the person's right to recover on an instrument is subject only to the defenses delineated in subsection (a)" of Idaho Code § 28-3-305. Id.

Owyhee took possession of the February 21, 2008 check, for value, and without notice of any deficiencies as provided in Idaho Code § 28-3-302. It is disputed, however, whether Owyhee took the instrument in good faith or whether Owyhee forced O Bar to issue the check by duress and against O Bar's protests. These disputes are again depend in large part upon the events of February 21,

2008.  As to the duress defense, Owyhee argues there have been no facts alleged that give rise to a claim of duress or that the check was issued under protest.  (Dkt. No. 98, p. 3). Though the facts as to what occurred on February 21, 2008 between the parties are unclear, at the very least, Mr. Goodwin's deposition contains testimony that he did object to the terms of the exchange sufficient to raise a possible defense over whether the check was issued under duress.  See (Dkt. No. 66, Ex. A).

      2.     <u>Money Due on Bailment</u>

Count two of Owyhee's counterclaims seeks money due on bailment for the 32 calves left on February 21, 2008 that Owyhee claims it has continued to keep, feed, water, and provide certain medical services.  (Dkt. No. 5, p. 15).  O Bar notes that Owyhee does not address this claim and that it has otherwise been abandoned. (Dkt. No. 78, pp. 2, 14).  Owyhee's motion and briefing do not address this claim nor does it appear that Owyhee seeks recovery of the claim as it asks only for summary judgment in the amount of the February 21, 2008 check for $190,134.38. (Dkt. No. 66, p. 2).  There is no reference to the counterclaim for $5,748.20 to recover the costs of care and feeding of the 32 O Bar calves allegedly left at the Owyhee feedlot on February 21, 2008.  However, the Court cannot say at this time that Owyhee has abandoned this counterclaim simply because it has not included it

in its motion for summary judgment. A party is not required to seek summary judgment on all claims or risk abandonment of such claims.

## ORDER

Being fully advised in the premises, the Court **HEREBY ORDERS** Defendant's Motion for Summary Judgment (Dkt. No. 66) is **DENIED**. Plaintiff's Motion to File First Amended Answer (Dkt. No. 106) is **GRANTED**.

DATED: **February 24, 2010**

Honorable Edward J. Lodge
U. S. District Judge