IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| O BAR CATTLE CO., a Utah d/b/a of Jerry Goodwin,<br><br>                Plaintiff,<br><br>    v.<br><br>OWYHEE FEEDERS, INC., an Idaho corporation,<br><br>                Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV08-149-S-EJL-CWD<br><br>**MEMORANDUM ORDER** |

Prior to reading the closing instructions to the jury in this matter, the Court considered the parties' proposed instructions, written objections to the propose instructions, and the arguments of counsel. On June 23, 2010, the Court made its oral ruling on the parties objections. One of the rulings included allowing the Plaintiff's, O Bar Cattle Company, claim of negligence to go before the jury over the Defendant's, Owyhee Feeders Incorporated, objection. The Court indicated that it would issue a memorandum regarding this ruling. This written order is the Court's decision regarding the O Bar's negligence claim.

## Discussion

In its proposed instructions, O Bar submitted instructions on its negligence claim for recovery of damages in this matter. (Docket No. 140). Owyhee Feeders filed a response to the Court's proposed jury instructions which included an objection to the

negligence claim on the grounds that it was precluded by the economic loss rule. (Docket No. 169). O Bar filed a reply arguing the negligence claim as to the damages for the deceased cattle was not precluded by the economic loss rule citing primarily to *Oppenheimer Indus. v. Johnson Cattle Co.*, 732 P.2d 661 (Idaho 1986). Owyhee Feeders countered by citing to *Aardema v. United States Dairy Systems, Inc.*, 215 P.3d 505 (Idaho 2009) and *Ramerth v. Hart*, 983 P.2d 848 (Idaho 1999) in support of its position. The Court has considered whether the negligence claim is barred as a matter of law by the economic loss rule and finds as follows.

"Unless an exception applies, the economic loss rule prohibits recovery of purely economic losses in a negligence action because there is no duty to prevent economic loss to another." *Blahd v. Richard B. Smith, Inc.*, 108 P.3d 996, 1000 (Idaho 2005) (citing *Duffin v. Idaho Crop Improvement Association*, 895 P.2d 1195, 1200 (Idaho 1995)). "Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Ramerth*, 983 P.2d at 850 (citation omitted); *see also Blahd*, 108 P.3d at 1000. Such economic loss is distinguished from property damage which is recoverable in tort. *Id.* "Property damages encompasses damage to property other than that which is the subject of the transaction." *Id.* (quoting *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 544 P.2d 306, 309 (Idaho 1975)). For

purposes of the economic loss rule, "transaction" does not mean a business deal; rather, it means the subject of the litigation. *Blahd*, 108 P.3d at 1000.[1]

Thus, generally "a plaintiff may not recover in tort where the sole allegation is that the defendant prevented the plaintiff from gaining a purely economic advantage." *Aardema*, 215 P.3d at 510 (citation omitted). The "economic loss rule" operates to segregate damage claims between the tort law and the contract law in a manner that the legislature has deemed to be the most efficient for the resolution of disputes. *See Duffin*, 895 P.2d at 1200 (finding that economic losses cannot be recovered on a negligence theory because "a contrary holding would undermine the comprehensive structure of the Uniform Commercial Code, and that the economic expectations of parties have traditionally not been protected by the tort law.") (citing *Clark v. International Harvester Co.*, 581 P.2d 784, 793 (Idaho 1978). The Idaho Supreme Court has chosen to draw the line between these two potentially overlapping systems of law on the basis of (1) whether the loss claimed relates to the subject matter of the transaction and (2) whether the loss claimed includes property damage. If the damages are purely economic and pertain to the subject matter of the transaction, there can be no recovery under a negligence theory. *Aardema*, 215 P.3d at 510 ("Without any physical damage to separate property, the loss is merely the product's failure to meet [the plaintiff's] expectations.").

---

[1] There are two exceptions to the economic loss rule: the existence of a special relationship between the parties and unique circumstances requiring a reallocation of the risk. *See Duffin*, 895 P.2d at 1201; *Blahd*, 108 P.3d at 1002. The parties do not argue either exception applies here.

**MEMORANDUM ORDER** 3

1.     Subject of the Transaction

The Idaho Supreme Court has "implicitly defined the 'subject of the transaction' by the subject matter of the contract." *Aardema*, 732 P.2d at 511 n. 2 (discussing *Blahd*, 108 P.2d at 1000). Applying this definition here, the underlying contract is a bailment agreement whereby Owyhee Feeders would keep, care for, feed, water and medicate O Bar's cattle in return for consideration. As such, the "subject of the transaction" is the bailment agreement. Therefore, the deceased cattle are property other than that which is the subject of the transaction and damages incurred to those cattle are property losses, not purely economic damages.[2] Accordingly, the O Bar's negligence claim is appropriate in

---

[2] It is arguable that the subject matter of the transaction in this case are the cattle and not the bailment agreement. Under Idaho law, the "subject of the transaction" has not been defined but, instead, has been applied by courts based on factual comparisons from previous decisions. *Aardema*, 215 P.3d at 511 (citing cases). For instance, in *Ramerth*, the court interpreted the subject of the transaction to apply the repair and inspection of an engine because it was "conceptually indistinguishable" from the FSIS's inspection in *Duffin*. *See Ramerth*, 983 P.2d at 851. In so deciding, the court in *Ramerth* stated:
> Although the Court in *Duffin* did not specifically discuss the "subject" of that transaction, the Court held that the economic loss rule applied to the reduced crop yield caused by the defective seed. It is implicit in the Court's decision that the seed-rather than the FSIS inspection-was the subject of the transaction. In *Tusch*, the defendant builder entered into a contract to build a duplex for the seller. The purchaser sued both the seller and the builder because of alleged negligence in preparing the foundation. This Court held that damage to the duplex caused by the defective foundation was purely economic. Once again, the subject of the transaction was not specifically discussed by this Court. It is nonetheless clear that the Court considered the duplex itself, rather than its construction, to be the subject of the transaction. We hold that the damages to the aircraft and engine alleged in this case were purely economic and, therefore, subject to the economic loss rule.

*Id*. These cases suggest that where the parties have contracted for services, the things being serviced are the subject of the transaction. The same can be said for the bailment agreement in this case which provided services to the cattle thereby making the cattle the subject of the transaction. Regardless, the negligence claim is appropriate in this case for the reasons stated in the property damage section of this Order.

**MEMORANDUM ORDER**                           4

this case. That being said, O Bar's negligence damages are limited to recovery of the cattle that died as discussed below.

2.   Property Damage

Even if the loss claimed relates to the subject matter of the transaction, a plaintiff may still recover damages under a negligence theory if they have suffered property damage. *Aardema*, 215 P.3d at 511 ("Economic loss is distinguishable from property damage, which would be recoverable under a tort claim."). In order to distinguish between the two types of damage the Idaho Supreme Court has offered the following guidance: "Economic loss has been defined as, but not limited to, costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Id.* at 510 (quoting *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 544 P.2d 306, 309 (Idaho 1975) *rev'd on other grounds* (internal quotations omitted). The Court will examine the loss claimed by O Bar and determine whether it is merely the lost economic expectation, which would not be recoverable, or if it constitutes property damage.

O Bar relies on *Oppenheimer* to support its claim that the death loss of cattle at Owyhee Feeders is property damage. In that case, the negligence of the State Brand Inspector caused the plaintiff's cattle to be stolen. *Id*. at 662. The court found that "it is a long held maxim that animals are tangible property." *Id.* at 664. Reasoning from this proposition the court concluded that "a cause of action in negligence is available for one whose chattel is lost or destroyed through the negligence of another." *Id.* The court had to

**MEMORANDUM ORDER**                                5

reconcile this apparent finding with the earlier decision in *Clark*, which established the separation of the tort and contract doctrines along the economic loss fault line. In order to do this the court held that "Unlike the plaintiff in *Clark* [the plaintiff] is not still in possession of defective goods. Rather, [the plaintiff] has suffered the *loss* of its *property* (i.e. the cattle) due to the negligence of [the defendant]." *Id.* (emphasis in original). The court in *Oppenheimer* drew a distinction between property that had been reduced in value and property that had been destroyed. In this case, because O Bar is only seeking the death loss of its cattle through its negligence claim, it is not precluded by the economic loss rule.

Owyhee Feeders contends that the Idaho Supreme Court's recent decision in *Aardema* overturns the language in *Oppenheimer*. This is not the case. The plaintiff in *Aardema* was seeking damages for the negligent design, installation and maintenance of an automated milking system that had caused "decreased milk production, quality, and damage to the cows." *Aardema*, 215 P.3d at 508. The court concluded that "if the only damage that is produced is in the form of lost milk production, quality and profits and not actual physical damage to the cows then this is purely economic loss; that is, the failure of the milking equipment to produce the products and profits anticipated by Aardema dairy." *Id.* at 511-12. Owyhee Feeders would be correct in asserting that the economic loss rule prevents O Bar from claiming any damages under negligence for a weight gain by the cattle that was below industry standards. This is properly characterized as O Bar's expectation from the contract, but it is not what O Bar is claiming under a negligence

theory. O Bar seeks only the damages deriving from the death loss of its cattle, a claim sanctioned by the court in *Aardema*.

O Bar's position is supported by Idaho case law. In *Duffin*, the plaintiff attempted to recover for blighted seeds. The court, relying on *Oppenheimer*, held that plaintiff "remained in possession of the defective seed which they sold and from which they suffered a loss of profits, not property." *Duffin*, 895 P.2d at 1200 n.25. Similarly, the court in *Ramerth*, held that a plaintiff could not recover subsequent costs associated with the improper service to an aircraft engine. It is clear that the Idaho courts have drawn a clear distinction between property damage and economic loss based around the destruction of the property. So long as a plaintiff claims actual damage and not just loss of use or value, they may seek damages under a negligence theory.

3.  Conclusion

For the reasons articulate herein, the Court overruled Defendant's objections to the proposed jury instructions regarding the negligence claim. The Plaintiff's negligence claim seeking recovery of damages for the deceased cattle was not barred by the economic loss rule.

**IT IS SO ORDERED**.

DATED: **June 30, 2010**

Honorable Edward J. Lodge
U. S. District Judge