# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| O BAR CATTLE CO., a Utah d/b/a of Jerry Goodwin,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>OWYHEE FEEDERS, INC., an Idaho corporation,<br><br>　　　　　Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV08-149-S-EJL-CWD<br><br>**MEMORANDUM ORDER** |

## INTRODUCTION

Pending before the Court in the above-entitled matter is Plaintiff/Counter-Defendant Motion to Alter or Amend Judgment or, alternatively, Motion to Correct Oversight. (Dkt. No. 186.) The parties have fully briefed the Motion and the matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff/Counter-Defendant, O Bar Cattle Co. ("O Bar"), is a cattle company owned by Jerry Goodwin and located in Ogden, Utah. O Bar owns steer and heifer calves bearing its brand. In October of 2007, O Bar entered into an oral contract for agistment with the Defendant/Counter-Claimant, Owyhee Feeders, Inc. ("Owyhee"), whereby Owyhee would care for certain of O Bar's calves on its feedlot in Melba, Idaho. Under this agreement and between October 10 and November 15, 2007, O Bar transported over 2,000 steer calves and approximately 1,100 heifer calves to the Owyhee feedlot. In mid-November of 2007, O Bar stopped arrangements to transport additional calves to the Owyhee feedlot when it discovered its calves already located at Owyhee were "sick and dying." (Dkt. No. 1.)

O Bar began arranging to transport its calves from Owyhee's feedlot and requested an accounting. O Bar thought it was to meet with Owyhee's principals, Charlie Gibson and Robert Lincoln, on February 21, 2008 at which time O Bar would transport its remaining calves, Owyhee would provide an accounting for the deceased calves, and the parties would discuss a settlement over the lost calves. O Bar arrived on February 21, 2008 with ten livestock shipping trucks and loaded the O Bar calves into the trucks. However, Owyhee demanded payment on the feed bill due and owing before the trucks could leave. A dispute arose between the parties ultimately resulting in O Bar writing a check for $190,134.48 to Owyhee. (Dkt. No. 1, p. 6.)

The following day, on February 22, 2008, O Bar stopped payment on the $190,134.48 check after discovering there were less cattle on the trucks than had been reported. Thereafter the parties were unable to resolve their dispute and on March 31, 2008, O Bar filed its Complaint against Owyhee, seeking recovery of damages for breach of contract, negligence, conversion, and declaratory relief. (Dkt. No. 1.) Owyhee filed an Answer asserting affirmative defenses to O Bar's claims and alleging counterclaims for dishonor of check and money due on bailment. (Dkt. No. 5.) O Bar answered denying the counterclaims and raising affirmative defenses. (Dkt. No. 10.)

The Court later denied Owyhee's Motion for Summary Judgment and the matter proceeded to trial on June 15, 2010. (Dkt. No. 124, 164.) After six days of testimony and evidence, on June 23, 2010, the Court instructed the Jury and the parties offered their closing summations after which the Jury began their deliberations. The following day, on June 24, 2010, the Jury returned their verdict finding in favor of O Bar on its breach of contract and negligence claims and in favor of Owyhee on its counterclaim for dishonor of check. (Dkt. No. 175.) The Jury awarded O Bar $74,543.00 and $75,600.00 on each of its claims and awarded Owyhee $190,134.38 on its counterclaim. (Dkt. No. 175.) Thereafter, the Court entered a Judgement in favor of Owyhee in the amount of $39,991.38. (Dkt. No. 185.) The instant Motion was then filed which the Court now takes up.

## DISCUSSION

*1. Rule 59(e) Motion to Alter or Amend Judgment*

*A. Standard of Law*

"The Federal Rules of Civil Procedure Rule 59(e) provides a means whereby the Court may alter or amend the judgment." *A.H.D.C. v. City of Fresno, Cal.*, No. CIV-F-97-5498, 2004 WL 5866233, *8 (E.D. Cal. March 9, 2004) (citing *Northern Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1155 (9th Cir. 1988); *United States v. Western Elec. Co.*, 690 F.Supp. 22, 25 (D.D.C.1988) (Rule 59(e) motion permits court to correct errors of fact or law appearing on the face of the record)). The scope and purpose of a motion to alter or amend under Rule 59(e) have been analyzed as follows:

> Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover they cannot be used to argue a case under a new legal theory.

*Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986) (citations omitted);

> Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.
> . . .
> [A] rehash of the arguments previously presented affords no basis for a revision of the Court's order.

*Illinois Central Gulf Railroad Company v. Tabor Grain Company*, 488 F.Supp. 110, 122 (N.D. Ill. 1980).

Where Rule 59(e) motions are merely being pursued "as a means to reargue matters already argued and disposed of and to put forward additional arguments which [the party] could have made but neglected to make before judgment, [S]uch motions are not properly classifiable as being motions under Rule 59(e)" and must therefore be dismissed. *Davis v. Lukhard*, 106 F.R.D. 317, 318 (E.D.Va. 1984); *see also, Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983) ("Plaintiff improperly used the motion to reconsider to ask the Court to rethink what the Court had already thought -- rightly or wrongly."). The Ninth Circuit has identified three reasons sufficient to warrant a court's reconsideration of a prior order: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Upon demonstration of one of these three grounds, the movant must then come forward with "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996).

> "With regard to a motion to alter or amend judgment pursuant to Rule 59(e):" Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion. However, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly. There are four basic grounds upon which a Rule 59(e) motion may be granted. First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the movant may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief

under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

*United States Fidelity & Guar. Co. v. Lee Investments LLC*, 551 F.Supp.2d 1069, 1072-73 (E.D. Cal. 2008) (quoting Federal Rules of Civil Procedure, 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd § 2810.1). "The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment. Also, amendment of the judgment will be denied if it would serve no useful purpose." *Id.* at 1073.

### B. *Analysis*

O Bar cattle asks the Court to alter or amend the Judgment entered in this case to correct what it argues is an inconsistent award of damages rendered as a result of the Jury's verdict. O Bar asserts the Jury's verdict and Judgment are inconsistent and create clear error or manifest injustice. The error alleged by O Bar "lies in the [J]ury awarding Owyhee the full value of the check in question when, according to the [J]ury's award of $150,143.00 in favor of O Bar, Owyhee failed to provide the full performance that was to be the consideration for the check." (Dkt. No. 187, p. 4.) Thus, they argue, the Jury's favorable findings on O Bar's claims means that Owyhee was not owed the full value of its February 21, 2008 bill, some $239,834.30. (Dkt. No. 187, p. 4.) Instead, O Bar contends the total damages the Jury found O Bar had suffered, $150,143.00, should reduce the amount of the feed bill due as claimed by Owyhee, $239,834.30, for a total possible amount owed to Owyhee of $89,691.30. Therefore, O Bar argues the Jury's award of payment of the February 21, 2008 check in the full amount of $190,134.38

overpaid its obligation to Owyhee and the Judgment should be amended accordingly. The Court should, O Bar asserts, correct the Jury's "oversight" in awarding the full $190,134.38 amount of the February 21, 2008 check. O Bar further argues the verdict's inconsistency violates Idaho Code § 28-3-302(4). Because of Owyhee's partial performance under the check, O Bar asserts, Idaho Code § 28-3-302(4) mandates the application of its mathematical formula to determine the amount payable under the instrument to which Owyhee is entitled. Doing so, O Bar calculates the total Judgment amount to be $79,038.08 in favor of O Bar. Owyhee opposes the Motion on several basis arguing O Bar misconstrues the unambiguous findings of the Jury and concocts a scheme that provides double recovery. (Dkt. No. 194, pp. 3-4.)

The arguments raised in the Motion here do not assert either an intervening change in controlling law or the discovery of new evidence not previously available. *See* Fed. R. Civ. P. 59(e). Instead, O Bar's Motion challenges the verdict as inconsistent and irreconcilable resulting in clear or manifest error in law or fact and manifest injustice. (Dkt. No. 205, p. 4.) *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *A.H.D.C.*, 2004 WL 5866233, *8. O Bar quotes *Zhang v. American Gem Seafoods, Inc.*, as the applicable standard in cases involving inconsistent and irreconcilable verdicts: "where inconsistent verdicts are alleged, the test is not whether there was substantial evidence for the jury's conclusion, but whether it is *possible to reconcile* the verdicts." 339 F.3d 1020 (9th Cir. 2003) (quoting *Vaughan v. Rickets*, 950 F.2d 1464, 1470 (9th Cir.

1991) (emphasis in original).¹ The Court has considered the arguments and finds as follows.

### 1. Jury's Verdict

O Bar's first contention is that the Jury's verdict is inconsistent by virtue of the Jury awarding damages on each of O Bar's claims while also awarding Owyhee damages in the full amount of the February 21, 2008 check. (Dkt. No. 187, p. 4.) Having reviewed the record and considering the arguments of both sides, the Court concludes the verdict is not inconsistent or irreconcilable. Just the opposite, the Jury's verdict was appropriate, absent of any clear error in law or fact, and without any resulting manifest injustice. The Jury was properly instructed on the law and presented with a Verdict Form that asked particular questions for each of O Bar's contract and negligence claims as well as questions relating to Owyhee's counterclaim for dishonor of check. The Jury found that Owyhee had breached the contract resulting in damages to O Bar totaling $74,543.00 and was negligent resulting in damages to O Bar amounting to $75,600.00.² Thus, the damages awarded to O Bar totaled $150,143.00.

---

¹ The quote from the *Zhang* opinion in turn was quoting from *Vaughan*, 950 F.2d at 1470 which was distinguishing *Pierce v. Southern Pacific Transportation Co.*, 823 F.2d 1366 (9th Cir. 1987)).

² Jury Instruction 26 detailed the elements of the breach of contract claim which related to the agistment contract between the parties. The six following instructions defined terms relating to the breach of contract claim. Jury Instruction 33 identified the elements of the negligence claim which involved a duty on Owyhee to use ordinary care in keeping, feeding, watering, and providing certain medical services to O Bar's cattle.

The Jury then went on, as instructed, to render its verdict on Owyhee's counterclaim. Jury Instruction 35 instructed the Jury on the elements of Owyhee's counterclaim for dishonor of check. Jury Instructions 36 and 37 defined O Bar's duress defense and claim of "offset" to the counterclaim. (Dkt. No. 179.) On the verdict form, Question 7 asked the Jury: "Does the Defendant have the right to enforce the February 21, 2008 check issued to it by the Plaintiff?" (Dkt. No. 175, p. 3.) The Jury answered "YES." (Dkt. No. 175, p. 3.) The Jury continued on to Question 8, finding the check was not issued under duress. (Dkt. No. 175, p. 3.) When then asked what amount of damages to award to the Defendant for the dishonor of check, the Jury wrote: "THE AMOUNT OF THE CHECK $190,134.38." (Dkt. No. 175, p. 4.) This leaves no doubt about the Jury's verdict or their intention. What is even more telling is the Jury's answer to Question 10 of the verdict form where they found O Bar was not entitled to an offset of the amount of damages awarded to the Defendant. (Dkt. No. 175, p. 4.)[3]

There is no argument on this Motion that the Jury's verdict was based on insufficient factual evidence or was contrary to the Court's instructions.[4] O Bar simply

---

[3] Jury Instruction 37 defined O Bar's claim of offset raised against Owyhee's counterclaim for dishonor of check stating:
> An offset is defined as a claim that serves to counterbalance or to compensate for another claim, and if proven, allows the plaintiff to offset the amount of any loss, liability or damage it suffered against any loss, liability or damage suffered by the defendant.

(Dkt. No. 179, Instr. 37.)

[4] Had the parties disputed the evidentiary basis for the Jury's findings, having viewed the evidence as it was offered, the Court agrees the facts of this case support the Jury's findings and verdicts.

**MEMORANDUM ORDER**           9

disagrees with the outcome. This is not a basis for altering or amending the Judgment or finding any oversite that needs to be corrected.

As to O Bar's contention that the Jury's verdict is inconsistent and cannot be rationalized, the Court disagrees. The Jury's verdict is consistent with the evidence presented, arguments of counsel, the Court's instructions, and Verdict Form submitted to the Jury. Moreover, the verdict is legally consistent and reconcilable within itself. O Bar's position seems to be that because it prevailed on its claims, its theory of the case must carry throughout all of the Jury's findings. The Jury's award on O Bar's claims, however, did not dictate its findings on Owyhee's claims. Instead, the Jury was free to find in favor of O Bar on its claims and yet also find in favor of Owyhee on its counterclaim in the full amount of the check. The testimony, evidence, arguments, instructions, and verdict form allowed for such a result. The fact that the Jury found as it did does not render the verdict inconsistent or irreconcilable.

It may be difficult for those close to the case to understand the Jury finding in favor of both parties on their respective claims. However, what may appear to be inconsistent to the parties is, to this Court, a perfectly fair, reasonable, and consistent resolution of the dispute in this case. The Jury ultimately determined that both parties were harmed and that both parties were at fault. In so finding, the Jury awarded each side the amount of damages it found had been proven by the evidence on their claims and expressly declined any offset between the damage awards. "That is the [J]ury's prerogative." *Zhang*, 339 F.3d at 1035. Such a verdict is consistent with the Court's

instructions and the verdict form. What O Bar seeks in its Motion is that the Court consider only part of the Jury's findings, that part consistent with its position, and to ignore the Jury's expressed finding that Owyhee was entitled to "THE FULL AMOUNT OF THE CHECK." (Dkt. No. 175, p. 4.) To do as suggested by O Bar would amount to materially altering the substance of the Jury's findings so as to conform it to O Bar's theory of this case. The Court declines such an invitation. The verdict here is not inconsistent or irreconcilable. Nor is there any clear error or manifest injustice in the verdict.

Based on the foregoing, the Court finds O Bar has failed to identify any clear or manifest error in law or fact or any manifest injustice in the Jury's verdict. *School Dist. No. 1J*, 5 F.3d at 1263; *A.H.D.C.*, 2004 WL 5866233, *8. The Jury's conclusions on the Verdict Form were not such that one legal conclusion was the prerequisite for another and there was no inconsistency in the verdict. *See Zhang*, 339 F.3d at 1034-35 (concluding "that legally inconsistent verdicts may nonetheless stand on appeal even though inconsistent"). Further, the arguments raised in this Motion were not brought prior to the entry of judgment in this case. *See United States Fidelity & Guar.*, 551 F.Supp.2d at 1081 ("Rule 59(e) may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."); *see also Zhang*, 339 F.3d at 1032-1039. For the foregoing reasons, the Court denies the Motion.

### 2. *Application of Idaho Code § 28-3-302(4)*

O Bar next argues the Court must apply the calculation contained in Idaho Code § 28-3-302(4) to the Judgment entered in this case, which states:

> If, under section 28-3-303(1)(a), the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as the holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance.

Idaho Code § 28-3-302(4).[5] O Bar argues this section applies where there is partial performance by the holder in due course. (Dkt. No. 187, p. 5.) In this case, O Bar contends Owyhee's partial performance amounted to only $89,691.30, not $239,834.30,[6] and it is only that amount which Owyhee can assert is payable as a holder in due course on the instrument. O Bar maintains the verdict's inconsistency with Idaho Code § 28-3-302(4) creates a manifest error of law or fact that must be corrected under Rule 59(e). (Dkt. No. 205, p. 4.)

Owyhee counters that Idaho Code § 28-3-302(4) does not apply here because the consideration supporting the issuance of O Bar's check was not Owyhee's promise to perform some future service. (Dkt. No. 194.) Instead, Owyhee argues, the consideration for the check was the value O Bar already received from services rendered up to February 21, 2008. (Dkt. No. 194, p. 8.) In addition, Owyhee argues as the holder in due course of

---

[5] Idaho Code § 28-3-303(1)(a) states: "An instrument is issued or transferred for value if: (a) The instrument is issued or transferred for a promise of performance, to the extent the promise has been performed."

[6] Again, O Bar calculates the $89,691.30 amount by subtracting the total amounts awarded by the Jury on its claims, $150,143.00, from the full amount of the February 2008 bill, $239,834.30.

**MEMORANDUM ORDER** 12

the check O Bar was limited in its defenses by Idaho Code § 28-3-305(2). Here, O Bar asserted only the duress defense which, Owyhee claims, was rejected by the Jury. This argument, Owyhee asserts, now seeks to raise a belated assertion of the "partial performance" defense not previously raised by O Bar. (Dkt. No. 194, p. 10.)

Having reviewed the record including the trial transcript, the Court denies the Motion because O Bar's "partial performance under the check" argument and the application of Idaho Code § 28-3-302(4) were not previously raised in this case. (Dkt. No. 205, p. 9.) "[U]nless the alleged inconsistency involves the sufficiency of the jury's factual findings to support the ultimate legal conclusion, the defendant must raise the issue prior to submission to the jury in order to preserve any objections to sufficiency of the evidence." *Zhang*, 339 F.3d at 1033. Here, O Bar's challenge is not to the sufficiency of the Jury's findings but, instead, to the alleged discrepancies between the Jury's conclusions on each of the parties' claims and the application of Idaho Code § 28-3-302(4). Such a challenge needed to be raised prior to submission to the jury. *Zhang*, 339 F.3d at 1033.

This argument was not raised in the pleadings as a defense in the Answer to the counterclaim or in the summary judgment briefing.[7] (Dkt. Nos. 10, 78, 107, 110, 124.)

---

[7] O Bar's affirmative defenses asserted in its Answer to the counterclaims did include "full performance," alleging O Bar was not liable on the counterclaims because it had fully performed its obligations on the contract. There was no corresponding defense, or even a separate claim, of "partial performance" raised by O Bar to limit Owyhee's recovery. (Dkt. No. 10.) The Court does recognize that the attorneys who tried the case were not the same counsel who plead the case or briefed the motion for summary judgment. Regardless, O Bar did not later raise this argument. O Bar instead was granted leave to amend its answer to assert a duress defense. (Dkt. Nos. 106, 124.) Good cause existed to allow O Bar leave to amend, the Court found, "so that the

Nor did O Bar raise "partial performance" as a theory of recovery, basis for damages, or limiting Owyhee's damages, or a defense at trial. (Dkt. No. 137, pp. 5-6.) O Bar's evidence, testimony, and closing argument at trial regarding the feed bill challenged the accuracy of Owyhee's records and accounting in terms of calculating O Bar's damages on the claims.[8] Instead, O Bar's arguments asserted the defense of duress to thwart Owyhee's counterclaim for dishonor of check and a claim of offset. (Dkt. No. 124, p. 17.) The Jury rejected both.

In fact, O Bar opposed Owyhee's own efforts during the trial to collect the full amount of the feed bill. Owyhee argued it should be allowed to seek recovery from the Jury of the full amount of the feed bill under their claims. O Bar opposed the argument and the Court agreed, rejecting Owyhee's position based on the pleadings finding it had not raised a claim for the full recovery of the $239,834.30. O Bar recognizes as much in its Motion when stating it "gives Owyhee the benefit of full recovery under a breach of contract claim (<u>which Owyhee never asserted</u>)...."[9] (Dkt. No. 205, p. 5) (emphasis added). Thus, it is a new theory that O Bar brings in this Motion in an effort to alter the outcome.

---

substantive arguments are properly presented and the matter can be fully resolved on the merits." (Dkt. No. 124, pp. 6-7.) Making clear that the Court's intention was for the parties to present all of their substantive arguments at trial.

[8] At trial Mr. Goodwin testified that he thought Owyhee's feed bill was high.

[9] It is telling that O Bar points out in its reply brief that at trial it "vigorously opposed Owyhee's claim that it earned this full amount" but that now, after the trial, O Bar will adopt the opposite position and use the full amount figure as its starting point for recalculating the damages award. (Dkt. No. 205, p. 5.) At trial and before the Jury was instructed, Owyhee argued it's position was that its claim was for the full value of the feed bill due and owing in the neighborhood of $239,000. The Court disagreed and limited Owyhee's counterclaim to the allegation in the pleading seeking recovery of the face value of the check; $190,134.38. (Dkt. No. 5.)

Applying this theory, O Bar states it is "giving Owyhee full credit for the amount it claimed to have earned from full performance of its obligations under the bailment contract." (Dkt. No. 205, p. 6.) Such generosity, however, is a self-serving attempt to re-calculate the damages award in its favor.

Likewise at trial, O Bar objected to testimony regarding the full amount of the feed bill when offered by Owyhee. During Mr. Lincoln's testimony he stated the total amount due for the feeding of O Bar's cattle was $255,918.44. He then testified that Owyhee received $34,994.04 from the sale of the O Bar left cattle which was then subtracted from the total amount due that yielded $220,924.40 due and owing. O Bar's counsel objected to the question arguing it was irrelevant because there was "no claim." Thus, O Bar's position at trial was that Owyhee had not plead a claim for the full amount of the feed bill due and owing and, therefore, any testimony or evidence regarding such was inadmissible. If the Jury found in Owyhee's favor on the counterclaim, O Bar argued, Owyhee was "limited to the amount of the check" and that the Jury can offset the amount by the damage the Jury found that O Bar had suffered. The Court agreed with O Bar and ruled that Owyhee was limited to the amount of the check. Thus, O Bar's argument on this Motion was not only not previously raised, but is contrary to its position throughout these proceedings.

Based on the foregoing, the Court concludes the Jury's verdict was clear, consistent with the evidence offered at trial, in accord with the Court's Jury Instructions, and correctly reflected on the verdict form. Further, the verdict was internally consistent

and reconcilable. There is no error of law, miscalculation, or manifest injustice. O Bar's argument seeks to make a substantive change to the verdict properly rendered in this case based on an argument not previously articulated or considered. Again, "[r]elief is not appropriate if the issue was not properly addressed during the proceedings." *A.H.D.C.*, 2004 WL 5866233, *8 (E.D. Cal. 2004) (citation omitted). "Similarly, a party who fails to present its strongest case is not entitled to a second opportunity by moving to amend a finding of fact and a conclusion of law, or for a new trial." *Id.* As such, the Court denies the motion. This issue was not properly addressed or considered during the proceedings and altering or amending the Judgment at this stage is inappropriate.

## 2. *Rule 60(a) Motion to Correct Oversight*

Under Rule 60(a) the Court may "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order or other part of the record." Fed. R. Civ. P. 60(a); *see also United States Fidelity & Guar.*, 551 F.Supp.2d at 1072-73. "Rule 60(a) is limited, however, to correcting errors arising from omission and may not be used to correct more substantial errors." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) (citations omitted). "[A] substantive error, which cannot be corrected by Rule 60(a), is one in which the court does not merely correct the record to indicate its original intent, but has a substantive change of mind." *Barber for Crytzer v. Cincinnati Bengals, Inc.*, No. 95-35411, 1996 WL 473731, at *1 (9th Cir. Aug.20, 1996) (citations omitted).

Here, O Bar alleges the Court should correct the Jury's "oversight" pursuant to Rule 60(a). (Dkt. No. 187, p. 6.) The Jury made a mistake, O Bar claims, by awarding Owyhee the full amount of the February 21, 2008 check but failing to deduct the $150,143.00 in damages it awarded to O Bar from the $239,834.30 unpaid feed bill Owyhee claimed was owed as of February 21, 2008. (Dkt. No. 187, p. 7.) Unlike the cases cited by O Bar, the Jury was never asked specifically to do such a calculation nor was there any mathematical error in the Jury's calculations or in the Judgement. (Dkt. No. 187, pp. 6-7.) The Jury here was asked, however, to determine whether an "offset" was appropriate, as argued by O Bar. The Jury did not agree and denied any offset. Because there was no error in the calculations nor failure of the Jury to make the calculation as argued by O Bar, the Court finds there is no mistake, oversight, clerical error, or the like in the verdict and the alternative Motion is denied. Further, O Bar's argument here asks the Court to make a substantive change to the verdict that was not contemplated nor addressed previously. As such, it is improper under Rule 60(a). *See Sanchez*, 936 F.2d at 1033.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

a. Defendant's Motion to Alter or Amend (Dkt. No. 186) is **DENIED**.

b. Defendant's Alternative Motion to Correct Oversight (Dkt. No. 186) is **DENIED**.

SO ORDERED THIS 20th day of October, 2010.

                                                Honorable Edward J. Lodge
                                                U. S. District Judge