UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **O BAR CATTLE CO.**, a Utah d/b/a of Jerry Goodwin, | Case No. CV 08-149-S-EJL-CWD |
| Plaintiff/Counterdefendant, | |
| vs. | **REPORT AND RECOMMENDATION** |
| **OWYHEE FEEDERS, INC.**, an Idaho corporation, | |
| Defendant/Counterclaimant. | |

## INTRODUCTION

Pending before the Court in the above-entitled matter are the competing motions

for attorney fees and costs filed by the parties. (Dkt. 188, 193.) The parties have fully

briefed the motions, and the matter is ripe for the Court's consideration.[1] The Court

conducted a hearing on January 21, 2011, at which the parties appeared and presented

oral argument. After carefully considering the parties' briefs, arguments, and applicable

case law, the Court recommends that both motions be denied and neither party be

awarded their attorneys' fees and costs in this matter.

---

[1] This matter was referred to the undersigned Magistrate Judge by District Judge Edward J. Lodge. (Dkt. 198.)

## BACKGROUND

Plaintiff/Counter-Defendant, O Bar Cattle Co. ("O Bar"), is a cattle company

owned by Jerry Goodwin and located in Ogden, Utah. In October of 2007, O Bar entered

into an oral contract for agistment with the Defendant/Counter-Claimant, Owyhee

Feeders, Inc. ("Owyhee"), whereby Owyhee would care for certain of O Bar's calves on

its feedlot in Melba, Idaho. Under this agreement and between October 10 and November

15, 2007, O Bar transported over 2,000 steer calves and approximately 1,100 heifer

calves to the Owyhee feedlot. In mid-November of 2007, O Bar stopped arrangements to

transport additional calves to the Owyhee feedlot when it discovered its calves already

located at Owyhee were "sick and dying." (Dkt. 1.)

O Bar began making arrangements to transport its calves out of Owyhee's feedlot

and requested an accounting. O Bar believed it was to meet with Owyhee's principals,

Charlie Gibson and Robert Lincoln, on February 21, 2008, at which time O Bar would

transport its remaining calves to different feedlots, Owyhee would provide an accounting

for the deceased calves, and the parties would discuss a settlement over the lost calves. O

Bar arrived on February 21, 2008, with ten livestock shipping trucks and loaded the O

Bar calves into the trucks. However, Owyhee demanded payment on the feed bill due and

owing before the trucks could leave. A dispute arose between the parties ultimately

resulting in O Bar issuing a check for $190,134.48 to Owyhee. (Dkt. 1 at 6.)

The following day, on February 22, 2008, O Bar stopped payment on the

$190,134.48 check after discovering there were less cattle on the trucks than had been reported. Thereafter, the parties were unable to resolve their dispute and on March 31, 2008, O Bar filed its Complaint against Owyhee, seeking recovery of damages for breach of contract, negligence, conversion, and declaratory relief. (Dkt. 1.) Owyhee filed an Answer asserting affirmative defenses to O Bar's claims and alleging two counterclaims for dishonor of check and money due on bailment. (Dkt. 5.) O Bar answered, denying the counterclaims and raising affirmative defenses. (Dkt. 10.)

The Court later denied Owyhee's Motion for Summary Judgment and the matter proceeded to trial on June 15, 2010. (Dkt. 124, 164.) After six days of testimony and evidence, on June 23, 2010, the Court instructed the Jury and the parties offered their closing summations after which the Jury began deliberations. The following day, on June 24, 2010, the Jury returned their verdict finding in favor of O Bar on its breach of contract and negligence claims and in favor of Owyhee on its counterclaim for dishonor of check. (Dkt. 175.) The Jury awarded O Bar $74,543.00 and $75,600.00 on each of its claims and awarded Owyhee $190,134.38 on its counterclaim. (Dkt. 175.) Thereafter, the Court entered a net judgment in favor of Owyhee in the amount of $39,991.38. (Dkt. 185.)[2]

Both parties filed motions for attorney fees and discretionary costs, each arguing that pursuant to Idaho Code § 12-120(3), they are the prevailing party. Owyhee

---

[2] The preceding four paragraphs containing factual background are excerpts from District Judge Edward J. Lodge's Amended Memorandum Order entered on October 20, 2010. (Dkt. 217.)

alternatively seeks fees under Idaho Code § 28-22-105. In addition, both parties assert entitlement to prejudgment interest on the entirety of their awards under Idaho Code § 28-22-104.

Owyhee asserts three reasons why it should receive $280,183.50 in attorney fees as the prevailing party under Idaho Code § 12-120(3). First, Owyhee argues it prevailed because Owyhee received a "net judgment" in its favor. Second, Owyhee contends it received 100% of its claimed damages, while O Bar claimed $268,460 in damages but was awarded only $150,143. And third, Owyhee contends that it successfully defended the action because O Bar did not receive 100% of its claimed damages, and two of the four claims asserted by O Bar did not proceed to trial.

O Bar advances its own reasons for why it should receive $411,596 in attorney fees and discretionary costs under Idaho Code § 12-120(3). First, O Bar contends it successfully recovered on its breach of contract claim and its related tort claim, as well as successfully defended against Owyhee's second counterclaim that it breached the bailment contract. In other words, O Bar contends it "won" on three out of the four issues that proceeded to trial. O Bar contends that Owyhee's "net judgment" argument is unavailing, because the relative size of the parties' awards is not determinative.

Owyhee asserts an alternative argument that it is entitled to attorney fees under Idaho Code § 28-22-105, which prescribes a mandatory award of attorney fees as part of the damages payable to the holder of a dishonored check. O Bar contends the statute does

not apply in this case, because the statutory notice provisions were not followed.

Furthermore, O Bar asserts that, by seeking fees under Idaho Code § 28-22-105, Owyhee

cannot also claim fees under Idaho Code § 12-120(3). Alternatively, O Bar argues that

Owyhee did not plead Idaho Code § 28-22-105 as a basis for attorney fees in Owyhee's

counterclaim. Owyhee argues the notice provisions of Idaho Code § 28-22-105 are

inapplicable because O Bar knew the check had been dishonored after placing the stop

payment request.

Both parties seek prejudgment interest under Idaho Code § 28-22-104(1).

## DISCUSSION

**1. Idaho Code § 12-120(3)**

Idaho law governs the award of attorney fees in this matter because federal courts

follow state law as to attorney fees in diversity actions. *See Interform Co. v. Mitchell*, 575

F.2d 1270, 1270 (9th Cir.1978) (applying Idaho law). Pursuant to Idaho Code

§ 12-120(3), the prevailing party is entitled to an award of attorney fees when a

commercial transaction is the gravamen of the lawsuit. *See Erickson v. Flynn*, 64 P.3d

959 (Idaho Ct. App. 2002). The parties agree to this statement of the law, but disagree on

which party is the prevailing party.

"The determination of who is a prevailing party is committed to the sound

discretion of the trial court." *Bream v. Benscoter*, 79 P.3d 723, 727 (Idaho 2003); *see also*

Idaho R. Civ. P. 54(d)(1)(B). Idaho R. Civ. P. 54(d)(1)(B) sets forth the governing legal

standards on the prevailing party issue. There are three factors the trial court must

consider when determining which party, if any, prevailed: (1) the final judgment or result

obtained in relation to the relief sought; (2) whether there were multiple claims or issues

between the parties; and (3) the extent to which each of the parties prevailed on each of

the claims or issues. *State v. Jardine*, 940 P.3d 1137, 1140 (Idaho 1997).

The Court in its discretion may determine that a party prevailed in part and did not

prevail in part, and may apportion the costs and fees between and among the parties in a

fair and equitable manner after considering all of the issues and claims involved in the

action and the resultant judgment or judgments obtained. *Eighteen Mile Ranch, LLC v.

Nord Excavating & Paving, Inc.*, 117 P.3d 130, 133 (Idaho 2005); *Nguyen v. Bui*, 191

P.3d 1107, 1112 (Idaho Ct. App. 2008). When both parties are successful, it is within the

Court's discretion to decline to award attorney fees to either side. *Crump v. Bromley*, 219

P.3d 1188, 1190 (Idaho 2009). Of particular relevance here is the Idaho Supreme Court's

observation that, "[i]n determining which party prevailed in an action where there are

claims and counterclaims between opposing parties, the court determines who prevailed

'in the action.' That is, the prevailing party question is examined and determined from an

overall view, not a claim-by-claim analysis." *Eighteen Mile Ranch*, 117 P.3d at 133.

When multiple claims and counterclaims are involved, this Court has distinguished

between two lines of Idaho cases deciding attorney fee issues. *J.R. Simplot Co., Inc. v. H

& H Transportation, Inc.*, No. CV05-397-S-EJL, 2007 WL 1238737 *3 (D. Idaho April

26, 2007). In cases involving claims and counterclaims over the same underlying facts or contract, the court should determine the prevailing party in the overall action, not on a claim-by-claim basis. *J.R. Simplot Co., Inc.*, 2007 WL 1238737 at \*3 (citing *Eighteen Mile Ranch, LLC*, 117 P.3d 130 and *Internat'l Eng. Co., Inc. v. Daum Industries, Inc.*, 630 P.2d 155 (Idaho 1981)). Alternatively, if the claims and counterclaims are distinct and discrete, the second line of cases indicates the court must analyze the claims separately to determine who is the prevailing party. *Id.* (citing *Rockefeller v. Grabow*, 82 P.3d 450 (Idaho 2003); *Bream v. Benscoter*, 79 P.3d 723 (Idaho 2003); *Ramco v. H-K Contractors, Inc.*, 794 P.3d 1381 (1990)).

In the instant case, there was but one contract—Owyhee's agreement to care for O Bar's cattle in return for payment. While there may have been several theories asserted for relief at trial, all of the facts arose out of the parties' agreement relating to the care of O Bar's cattle. Therefore, it is appropriate to follow the reasoning in *Eighteen Mile Ranch* and *Daum*, and not parcel out the winner and loser of each claim.

In the instant case, viewing the claims and damages awarded to the parties as a whole, there is no prevailing party. While it is true that O Bar asserted $268,460.40 in damages (*see* Trial Brief at 6, Dkt. 137) and ultimately was awarded $150,143.00, it is apparent to the Court that O Bar recovered the entirety of its claim for breach of contract and negligence. O Bar's damage breakdown was as follows: $151,480 for the loss of its cattle, which formed the gravamen of its claims for negligence and breach of contract;

$102,980.40 for excessive charges for feed, which O Bar asserted should be applied to offset the $190,134.48 Owyhee claimed was owed for the care of the cattle and which was represented by the dishonored check; and $14,000 owed on its conversion claim for the unreturned cattle.[3] The Jury awarded O Bar a combined total of $150,143 apportioned roughly equally between O Bar's breach of contract and negligence theories, and found that no offset should be applied to the $190,134.48 check amount that Owyhee claimed was owed for feed and care of the cattle and which the Jury awarded in full to Owyhee. O Bar's conversion claim did not proceed to trial, and O Bar successfully defended itself with respect to Owyhee's claim for money due upon bailment.

Viewed in this light, it is clear that each party prevailed upon the main issues asserted at trial. O Bar simply failed to prevail in its defense that the $190,134.48 claimed due by Owyhee, which represented services and feed for the care of the cattle, should be offset by amounts O Bar claimed were excessive feed charges. The Court therefore concludes neither party prevailed against the other, and recommends that the parties' respective motions be denied.

With respect to the costs claimed, Fed. R. Civ. P. 54(d)(1) permits costs to be awarded to the prevailing party. In light of the analysis above that neither party prevailed,

---

[3] O Bar's trial brief set forth the above breakdown. When asked at the hearing what the evidence was at trial, Owyhee represented that an amount between $49,000 and $100,000 was the amount of offset presented to the jury, representing amounts for feed, the cattle that died in transport, and the cattle left behind on Owyhee's feedlot.

the Court recommends that the Clerk be directed to deny the parties' respective bills for costs. (Dkt. 190, 191.)

**2. Idaho Code § 28-22-105**

Owyhee argues in the alternative that the mandatory language in Idaho Code § 28-22-105 applicable to recovery of damages for a dishonored check entitles it to attorney fees in the event Idaho Code § 12-120(3) does not provide for recovery of fees. As a preliminary matter, O Bar asserts Owyhee cannot rely upon Idaho Code § 28-22-105, because it was not plead as a basis for fees. However, a party need not have listed a specific attorney fee provision in its pleading to obtain a fee award under that provision upon prevailing in the litigation. *Eighteen Mile Ranch*, 117 P.3d at 135. Therefore, Owyhee is not prevented from seeking an award under 28-22-105 simply because its answer or counterclaim did not designate this provision as a basis for fees. *Id.*[4]

Turning to Idaho Code § 28-22-105, it states, in pertinent part:

> Whenever a check . . . has been dishonored by nonacceptance or nonpayment and has not been paid within fifteen (15) days *and after the holder of such check sends such notice of dishonor as provided in section 28-22-106, Idaho Code*, to the drawer, then if the check does not provide for the payment of interest, or collection costs and attorney's fees, the drawer of such check shall also be liable for payment of interest at the

---

[4] O Bar argued also that Idaho Code § 28-22-105 provided the exclusive basis for claiming fees, and Owyhee could not alternatively argue entitlement to fees under Idaho Code § 12-120(3). The Court does not reach that argument, because in the exercise of its discretion, the Court finds Owyhee is not entitled to fees under either statute. The Court notes, however, that in *Nguyen v. Bui*, 191 P.3d 1107, 1112 (Idaho Ct. App. 2008), which involved a dishonored check, the court considered Idaho Code § 12-120(3) as a basis for awarding attorney fees.

rate of twelve percent (12%) per annum from the date of dishonor and cost of collection not to exceed twenty dollars ($20.00) or the face amount of the check, whichever is the lesser; . . . *In addition, in the event of court action on the check, the court, after such notice and the expiration of said fifteen (15) days, shall award reasonable attorney's fees as part of the damages payable to the holder of the check. . . . **The provisions of this section shall not apply to any check which has been dishonored by reason of any justifiable stop payment order.***

(emphasis added.)

Owyhee and O Bar argue principally about the notice provision contained within Idaho Code § 28-22-105. Owyhee argues that O Bar knew of the dishonor because it stopped payment on the check, therefore vitiating the requirement for formal notice, while O Bar contends that the notice provisions are mandatory and absent following them, Owyhee cannot collect attorney fees.

However, neither party quoted or discussed the impact of the statute's last sentence, which clearly states that <u>none</u> of the provisions of the statute are applicable to "any check which has been dishonored by reason of any justifiable stop payment order." (*See* Owyhee Mem. at 14, Dkt. 193-1; O Bar Mem. at 3, Dkt. 204.) The plain meaning of the statutory language indicates the entirety of § 28-22-105 does not apply if the dishonor resulted from a "justifiable stop payment order." Therefore, the parties' arguments over notice of dishonor are irrelevant. Instead, the Court must interpret whether the statute applies at all under the facts of this case. The Court concludes that it does not.

Although Idaho courts have not had an occasion to interpret § 28-22-105 with respect to what constitutes a justifiable stop payment order, other states with similar statutes provide guidance, as does the definition of "justifiable." When an act is "justifiable," it is "capable of being justified," or is "defendable" or "defensible."[5] "Justified," in turn, is a verb meaning "to show to have had a sufficient legal reason."[6] Louisiana's statute applicable to dishonored checks provides for attorney fees when the drawer of a check "stops payment on the check . . . when there is no justifiable dispute as to the amount owed . . . ." *Royal Air, Inc. v. Pronto Delivery Serv., Inc.*, 917 So. 2nd 1197, 1198 (La. Ct. App. 2005). Washington's statute, which is similar to Idaho's statute, also states that the statute does not apply to checks "dishonored by reason of any justifiable stop payment order." *Northwest Motors, Ltd. v. James*, 788 P.3d 584, 586 (Wash. Ct. App. 1990) (citing Wash. Rev. Code § 62A.3-515(1)). Interpreting that phrase, the Washington Court of Appeals indicated that a "stop payment order issued on some legal basis or some other reasonable basis would be justifiable." *Northwest Motors, Ltd.*, 788 P.3d at 586. The relevant time period for assessing whether the stop payment order was justified is the time that the stop payment order is issued. *Id.* at 588 (examining the

---

[5] *Justifiable Definition*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/justifiable (last visited Jan. 21, 2011).

[6] *Justified Definition*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/justified (last visited Jan. 21, 2011).

circumstances surrounding the issuance of the check and the subsequent stop payment order to determine justification).

According to the testimony at trial and throughout this case, O Bar had a reason for stopping payment on its check. O Bar wrote the check after the parties discussed the reduction in the feed bill due to the death of a number of O Bar cattle. At that point, Owyhee loaded the remaining O Bar cattle on to O Bar's transport trucks. Upon unloading the trucks, O Bar discovered there were less cattle on the trucks than had been represented, and thereafter stopped payment on the $190,134.48 check. The dispute between the parties concerned whether one or the other party was entitled to damages for breach of the parties' contract, and therefore involved the issue of whether Owyhee was entitled to damages represented by the amount of the check or not.

Based upon the above, the Court cannot conclude that O Bar's reasons for stopping payment on the check were other than justifiable. O Bar believed at the time that its resolution of the feed bill the day before was in error, because not all of its remaining cattle had boarded the trucks as represented by Owyhee. O Bar consistently defended its actions on that basis. The Jury made no specific finding concerning O Bar's justification for the stop payment order placed on the check to Owyhee. Instead, the Jury was asked only whether Owyhee had the right to enforce the check, and awarded damages for the dishonor of the check in the full amount of the check without any offset. (Special Verdict Form, Dkt. 175.) In the absence of specific findings on this issue by the Jury, and in light of the evidence introduced at trial regarding why O Bar stopped payment on the check,

the Court concludes the provisions of Idaho Code § 28-22-105, including the notice, interest, and mandatory attorney fee provisions, do not apply.

**3. Prejudgment Interest Under Idaho Code § 28-22-104**

Both parties claim the right to prejudgment interest on the entirety of their awards, and argue that the opposing party is not entitled to interest under various theories. Idaho Code § 28-22-104(1) provides for interest allowed at the rate of 12% "when there is no express contract in writing fixing a different rate of interest" on money after the same becomes due. Assuming without deciding the issues raised by the parties that § 28-22-104(1) does not apply to the parties' respective claims, the Court examines the merits of each parties' claim to prejudgment interest and concludes neither O Bar nor Owyhee is entitled to interest.

Prejudgment interest may be awarded on a claim that is "liquidated or ascertainable by mere mathematical process." *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.*, 896 P.2d 949, 954 (Idaho 1995). The court in *Pocatello Auto Color, Inc.* explained that *Ervin Const. Co. v. Van Orden*, 874 P.2d 506 (Idaho 1993) and *Seubert Excavators, Inc. v. Eucon Corp.*, 871 P.2d 826 (Idaho 1994) are instructive on the proper calculation of prejudgment interest on a liquidated claim subject to offset by the other party's unliquidated claim. *See Pocatello Auto Color, Inc.*, 896 P.2d at 954. Where "there are offsetting claims, one liquidated and the other unliquidated, no prejudgment interest may be awarded on the liquidated claim if the unliquidated claim directly affects or makes certain the value of the liquidated claim." *Pocatello Auto Color, Inc.*, 896 P.2d at

955. This will occur, for example, when the unliquidated claim challenges the value of the performance forming the basis of the liquidated claim. *Id.*

The present case is closer to the facts in *Ervin*. In that case, there was but one contract between a builder and homeowners for the construction of a home. The contractor's employment was terminated, and he sued the homeowners to compel payment under the contract for the "percentage of work completed based on net contract amount and value of materials installed." *Ervin Constr. Co. v. Van Orden*, 874 P.2d at 515. The homeowners counterclaimed for breach of warranty, claiming the home was not constructed in a workmanlike manner. In its decision reversing the award of prejudgment interest, the court of appeals concluded that the amount due under the contract was not liquidated because, while the net contract amount for the cost to build the home was readily ascertainable, the value of the materials installed was not because the homeowners' claim was based, in part, upon various defects in the materials installed. *Ervin Constr. Co.*, 874 P.2d at 515.

Like in *Ervin*, the two claims in this case arise under the same contract and are closely related. The Jury's award of the $190,134.38 dishonored check to Owyhee, although liquidated as to amount, could not be ascertained prior to trial because of O Bar's unliquidated claim[7] challenging the amount owed due to Owyhee's negligence in

---

[7] In its brief, O Bar does not explain how it is legally entitled to prejudgment interest under § 28-22-104(1) based upon the principles explained above. (*See* Brief at 7, Dkt. 189.) Instead, O Bar claims it is entitled to prejudgment interest based upon the net judgment in favor of Owyhee, even though the net judgment is to be paid to Owyhee. The Court has located no case law awarding prejudgment interest based upon such a theory. Instead, the Court concludes that O Bar's claim for negligence and breach of

the care of its cattle, as well as its claim—albeit unsuccessful—for offset based upon

excessive charges for feed. Therefore, the principal amount of liability at the time the

check was dishonored was not mathematically and definitely ascertainable, and neither

party should be awarded prejudgment interest.

## CONCLUSION

Based upon the foregoing, the Court concludes neither party prevailed, and neither

party is entitled to attorney fees, costs, or prejudgment interest based upon the legal

authority and theories presented to the Court. Therefore, the Court will recommend that

both motions be denied, and costs be disallowed by the Clerk of the Court. Because of its

decision, the Court did not reach the arguments of the parties concerning the

reasonableness of the claimed fees, or whether discretionary costs should be allowed.

---

contract for damages due to the death and/or sickness of its cattle is unliquidated, since the amount
allegedly owed necessarily depended upon the discretionary determination of the jury as to whether a
larger or smaller amount should be allowed. In addition, "prejudgment interest often is disallowed in tort
cases because the question of liability—that is, whether money is 'due'—awaits an eventual judgment of
the court." *Schenk v. Smith*, 793 P.2d 231, 232 (Idaho Ct. App. 1990). At the hearing, O Bar conceded
that it was not seeking prejudgment interest.

## RECOMMENDATION

### NOW THEREFORE IT IS HEREBY RECOMMENDED that:

1)      Plaintiff's Motion for Attorney Fees (Dkt. 188) be **DENIED**.

2)      Defendant's Motion for Attorney Fees (Dkt. 193) be **DENIED**.

The Clerk is further instructed to deny the Parties' respective bills of costs. (Dkt.

190, 191.)

Written objections to this Report and Recommendation must be filed within
fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or
as a result of failing to do so, that party may waive the right to raise factual and/or legal
objections to the United States Court of Appeals for the Ninth Circuit.

DATED: January 31, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge